# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREGORY ADONIS MURPHY,** | Case No. 1:12-cv-00309-LJO-JLT (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **KELSO, et al.,** | **(Doc. 62)** |
| Defendants. | **OBJECTIONS DUE WITHIN 30 DAYS** |

Plaintiff claims that Defendants were deliberately indifferent to an ear infection that he contracted which resulted in permanent loss of hearing in his left ear. Defendants have moved for summary judgment asserting: (1) that Defendant Warden Allison was not involved in providing or denying and had no responsibility or authority to respond to Plaintiff's letters regarding his medical care; (2) that Defendants Dr. Metts and Dr. Enemoh provided reasonable care and treatment for Plaintiff's ear condition, his hearing loss was unpreventable, and they are entitled to qualified immunity; and (3) Plaintiff failed to exhaust his administrative remedies before filing this action. Because Plaintiff has failed to show that a triable issue of material fact exists, the Court recommends the motion for summary judgment be **GRANTED**.[1]

///

---

[1] Because the Court decides this matter on the merits of Plaintiff's claims, it declines to consider the other issues raised in the motion.

1

## I. Procedural History

Plaintiff is proceeding on claims for deliberate indifference to his serious medical needs under the Eighth Amendment. Defendants filed the present motion (Doc. 62) and Plaintiff filed an opposition (Doc. 67) to which Defendants replied (Doc. 68).[2] The motion is deemed submitted. L.R. 230(l).

## II. Plaintiff's Claims

Plaintiff's claims arose while he was incarcerated at the California Substance Abuse Treatment Facility and State Prison at Corcoran ("SATF"). (Doc. 17 at 2-3.) Plaintiff is proceeding on claims found cognizable based on the following allegations: that Defendant Allison was deliberately indifferent to his medical condition when she ignored two "written pleas from Plaintiff concerning the lack of medical care . . . regarding (sic) his deteriorating ear infection" (*id.* at 4); that Defendant Dr. Enenmoh was informed of Plaintiff's sever ear infection by his primary physician, but failed to provide the necessary services to treat it; and that on March 12, 2010, Defendant Dr. Metts examined Plaintiff and noted the "[b]eginning stages of an ear infection," but failed to treat it (*id.* at p. 8). Plaintiff consequently developed a severe ear infection and "permanent hearing loss in [his] left ear." *Id*.

## III. Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.,* 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make

credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. Discussion and Analysis

### A. Deliberate Indifference

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v.*

1  *Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc.
2  v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v.
3  County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994). It is undisputed that Plaintiff's ear
4  infection (which required antibiotics, pain medications, and referral to not one but two specialists)
5  posed a serious medical need.

6  Deliberate indifference is "a state of mind more blameworthy than negligence" and
7  "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v.
8  Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). "Deliberate indifference
9  is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this
10 standard, the prison official must not only 'be aware of the facts from which the inference could
11 be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the
12 inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been
13 aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter
14 how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188
15 (9th Cir. 2002)).

### 1. Defendant Warden Allison

17 Plaintiff is proceeding against Defendant Warden Allison on allegations that she violated
18 his rights under the Eighth Amendment when she failed to respond to two letters in which
19 Plaintiff complained about inadequate medical care. (Doc. 17, p. 4.) Defendants assert that there
20 is no evidence that Warden Allison was deliberately indifferent to Plaintiff's serious medical
21 need. (Doc. 62-1, 18:18-20:2.)

22 The Ninth Circuit has held that, where the applicable constitutional standard is deliberate
23 indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's
24 knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d
25 1202 (9th Cir. 2011). It is under this rubric that the Court analyzes the elements of supervisor
26 liability.

27 A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his
28 or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (internal quotation marks omitted) (abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," *id*. (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir.2001). Further, when resolving a claim under the Eighth Amendment against individual defendants, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988) *citing with approval Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.")

Defendants submit evidence which shows that: it was not part of Defendant Allison's responsibility or within her authority as SATF Warden to respond to or address inmate complaints regarding their health care, and therefore there was nothing she could have done to address Plaintiff's medical needs (Doc. 62-3, DUF[3] No. 46); Plaintiff does not know if Defendant Allison ever received either of his letters (one of which was simply addressed to "Defendant CSATF") (*id.*, Nos. 45, 63); Plaintiff testified in his deposition that he has no evidence to show

---

[3] Defendants' Undisputed Facts are hereinafter abbreviated to "DUF No. **."

6

1  that Defendant Allison was in any way personally involved in providing or denying his medical
2  care (*id.,* DUF No. 86); Defendant Allison never met Plaintiff and was not aware of his ear pain
3  and hearing loss while she was the SATF Warden (Doc. 62-8, ¶5); she does not recall ever having
4  reviewed any of Plaintiff's health care 602 appeals and was never made aware by any employee
5  of SATF of Plaintiff's medical complaints (*id.*); and in connection with defending this lawsuit,
6  she has read the two letters that Plaintiff wrote and addressed to her, but she never read or saw
7  them prior to this lawsuit and she never responded to either of them (*id.*).

8  This evidence meets Defendants' burden of showing that Plaintiff cannot prove that
9  Warden Allison had knowledge of Plaintiff's medical problems related to his ear to have been
10 deliberately indifferent to or to have acquiesced to any unconstitutional care and treatment
11 thereof. This evidence meets Defendants' burden of showing that Plaintiff cannot establish a
12 sufficient causal connection between any action, or inaction, by Warden Allison that deprived
13 him under color of law of a federally secured right. Thus, Defendants met their burden of
14 establishing absence of evidence to support Plaintiff's case against Warden Allison which shifts
15 the burden to Plaintiff "to designate specific facts demonstrating the existence of genuine issues
16 for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).
17 In opposition to this part of the motion, Plaintiff asserts that Warden Allison did not act in good
18 faith or with due care and is "liable for any and all acts, as [she] independently acted on [her] own
19 accord knowingly [sic]." (Doc. 67, 5:8-17.) Plaintiff does not submit any evidence to support
20 this assertion. Thus, because Plaintiff does not meet his burden in opposing Defendants' motion
21 and summary judgment, the Court recommends that the motion be **GRANTED** to Warden
22 Allison.

23 **2. Defendant Dr. Metts**

24 Plaintiff is proceeding against Defendant Dr. Metts on allegations that he failed to provide
25 any treatment of the early stages of Plaintiff's earache on March 12, 2010. (Doc. 17, p. 8.)
26 Defendants assert that Dr. Metts is entitled to summary judgment because there is no evidence he
27 was deliberately indifferent to Plaintiff's serious medical need since he provided reasonable care
28 and treatment for Plaintiff's ear condition and that Plaintiff's hearing loss was not preventable.

1  (Doc. 62-1, 21:6-25:24.)

2  In medical cases, deliberate indifference requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted). Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

Defendants submit evidence that shows Dr. Metts met with and examined Plaintiff just four days after he first reported experiencing ear pain. (Doc. 62-3, DUF Nos. 12-13.) Dr. Metts prescribed a regimen of antibiotics for an early ear infection, which he had seen and treated in other patients the same way many times before. (*Id.,* DUF Nos. 15, 17, 90.) When Plaintiff complained that the antibiotics did not improve his hearing, Dr. Metts immediately referred Plaintiff to an ENT specialist for consultation and surgery. (*Id.,* DUF Nos. 20, 33-34, 76.) He did so even though there was no clinical evidence of a serious ear infection (i.e., Plaintiff's ear canal was clear, his hearing did not worsen, and he was able to walk without losing balance). (*Id.,* DUF No. 20.)

Defendants' evidence also shows that when the surgery did not seem to help Plaintiff's hearing, Dr. Metts continued to meet with Plaintiff, observe progress, referred Plaintiff back to the ENT specialist, and prescribed various medications for pain, including Motrin 600 mg and later Morphine. (Doc. 62-3*,* DUF Nos. 33-34, 60, 77.) When he saw that the ear tube fell out, Dr. Metts immediately sent Plaintiff back the ENT specialist on an "urgent" basis and followed the specialist's recommendation to try other antibiotics, specifically Keflex. (*Id.,* DUF Nos. 39, 55.) When one of the antibiotics recommended by the ENT specialist upset Plaintiff's stomach, Dr. Metts prescribed a different antibiotic, "dorycycline." (*Id.,* DUF No. 57.) Finally, when it was clear that nothing more could be done for the hearing loss, Dr. Metts referred Plaintiff for hearing aids. (*Id.,* DUF No. 83.)

Defendants' submit further evidence that shows Dr. Metts had no control over the scheduling of appointments with a specialist once he recommended the referral.  (Doc. 62-3, DUF No. 24.)  While he did not always make the referral requests on an "urgent" or "emergent" basis (given an absence of signs of distress or severe infection), Dr. Metts always made the request for services the same day he saw Plaintiff.  (*Id.,* DUF Nos. 21, 39, 59, 61, 76.)  Dr. Metts did eventually put in an "urgent" request for a follow-up with Dr. Kitt when he believed there was a need, given that he saw that the PE tube had become dislodged from Plaintiff's eardrum.  (*Id.,* DUF Nos. 38-39.)

Defendants also submit evidence that establishes there is no evidence that Dr. Metts made any mistake (or acted unreasonably) in his attempts to treat Plaintiff's ear problems.  Defendants' evidence shows that there was no clinical sign of serious hearing loss (beyond what was expected for an ear infection) when Dr. Metts initially examined Plaintiff and prescribed antibiotics.  (Doc. 62-3, DUF Nos. 15-16.)  Dr. Metts had no reason to believe Plaintiff had anything more than an early ear infection at that time because Plaintiff told him he began experiencing pain only "four days ago" when they first discussed his ear pain on April 16, 2014 (*id.,* DUF No. 12), that his hearing was not entirely obstructed, and he could still hear out of his left ear if he tilted his head (*id.*, DUF Nos. 13-14).   Defendants' evidence further shows that two separate ENT specialists who treated Plaintiff agreed with Dr. Metts' approach -- Dr. Victor Kitt, who implanted an ear tube to help aerate Plaintiff's left ear canal, eventually recommended continuing antibiotic treatment for the infection (*id.*, DUF No. 42) and Dr. Wilbur Suesberry, an ENT specialist with over three decades of experience treating ear infections and hearing loss issues, agreed that Dr. Metts' decision to try antibiotics first was the proper treatment and would not have done anything different (*id.*, DUF Nos. 17, 73, 79).

Defendants' evidence shows that Dr. Metts neither engaged in a purposeful act, nor failed to appropriately respond to and treat Plaintiff's medical need. *See Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  Thus, Defendants met their burden on moving for summary judgment as to Plaintiff's claims against Dr. Metts sufficient to shift the burden to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*

*Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).

In opposition to this part of the motion, Plaintiff asserts that Dr. Metts

> . . . knew or should have known that his conduct was not medically consistent with his training. Yet deliberately acted indifferent to plaintiff's serious medical needs (Knowingly) [sic]. Furthermore, defendant Metts delayed plaintiff's medical treatment and allowed a relatively minor ear condition to escalate to a serious ear infection causing permanent hearing loss. Defendant Metts knew or should have known that his actions would befell plaintiff. Therefore defendant metts [sic] is liable for any and all acts as he independently acted on his own accord (knowingly) [sic].

(Doc. 67, p. 5.) Plaintiff then generally refers to Exhibits A through N, which amounts to approximately 130 pages, attached to his opposition. (*Id.*) Despite this, Plaintiff does not show that he has knowledge or special training on medical issues upon which this Court should accept his opinion/conclusory statements in contradiction to physicians on medical issues. At best, Plaintiff shows that he disagreed with the course Dr. Metts chose for his medical treatment. This is insufficient to meet Plaintiff's burden in opposing a motion for summary judgment and would not even amount to a cognizable claim for violation of Plaintiff's rights under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Further, Plaintiff may not defeat Defendants' motion for summary judgment by generally referring to most of the exhibits filed with his opposition. "[E]ven if an affidavit is on file, a district court need not consider it in opposition to summary judgment unless it is brought to the district court's attention in the opposition to summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). In other words, the Court will not consider any affidavits, declarations, or other documents as evidence in support of Plaintiff's opposition unless Plaintiff, in an opposition brief, identifies what the documents are and where they came from, cites to the particular portions of the documents that support his opposition, and sets forth arguments explaining how each document and its contents support the arguments and allegations made in his brief. "[A] district court is 'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Id.* (*quoting Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Although a Court may consider materials that are not

cited, *see* Federal Rule of Civil Procedure 56(c)(3), materials submitted that are not specifically cited and accompanied with arguments explaining how the cited materials support a position need not be considered. Further, the Court is not required and declines to attempt to correlate Plaintiff's evidence with the facts he purports establish a dispute where Plaintiff has failed to do so. *See* Fed. R. Civ. Pro. 56(c)(1). Thus, because Plaintiff does not meet his burden in opposing Defendants' motion and summary judgment, the Court recommends that the motion be **GRANTED** to Defendant Dr. Metts.

### 3. Defendant Dr. Enenmoh

Plaintiff alleged that Defendant Enenmoh was responsible for executing necessary medical services, but failed to do so regarding Plaintiff's ear condition despite being informed by the primary care physician of Plaintiff's need for treatment. (Doc. 17, at p. 7.) Defendants assert that Dr. Enenmoh was not deliberately indifferent to Plaintiff's ear condition and that Plaintiff's hearing loss was not preventable. (Doc. 62-1, 20:3-21:5.)

Plaintiff specifically alleged that Dr. Enenmoh failed or refused to "execute the necessary medical services to Plaintiff, leaving him in severe pain and delaying the medically necessary treatment Plaintiff needed." (Doc. 17 at p. 7:6-13.) Defendants attack these allegations by showing that Dr. Enenmoh approved every request for services attempting to address Plaintiff's ear infection and the pain and hearing difficulties, starting on May 11, 2010 (when Dr. Enenmoh was first made aware of Plaintiff's ear problem). (Doc. 62-3, DUF Nos. 21-22, 59, 67.) On September 28, 2010, Dr. Enenmoh personally examined Plaintiff and referred Plaintiff to see Dr. Suesberry for a second opinion since Plaintiff complained of continuing discharge from his left ear. (*Id.*, DUF No. 67.) When it was clear there was nothing more could be done to prevent the hearing loss, Dr. Enenmoh approved a referral for Plaintiff to see an audiologist to be fitted for hearing aids. (*Id.*, DUF No 75, 83.) Defendants correctly argue that this evidence shows Dr. Enenmoh did not refuse to "execute the necessary medical services" as Plaintiff alleges in his Amended Complaint. (Doc. 62-1, 20:3-21:5.)

Defendants further show that Dr. Enenmoh had no control over the scheduling of appointments with ENT specialists, which is handled by a non-medical department of the prison

and the ENT specialist's office. (Doc. 62-3, DUF No. 24.) Defendants' evidence also shows that Plaintiff delayed reporting his hearing loss until April 16, 2010 even though his hearing apparently started to deteriorate in October of 2009. (*Id.*, DUF Nos. 1, 12.) The first time Dr. Enenmoh learned of any problem with Plaintiff's ear was on May 11, 2010, when Dr. Metts referred Plaintiff to see an ENT specialist (*id.*, DUF No. 22) which Dr. Enenmoh approved that very day (*id.*, DUF No. 21). Defendants correctly argue that this shows that Plaintiff has no evidence that Dr. Enenmoh disregarded his serious medical need or delayed his medical care. Thus, Defendants met their burden of establishing absence of evidence to support Plaintiff's case against Defendant Dr. Enenmoh which shifts the burden to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).

Plaintiff continues to argue, without evidence that Dr. Enenmoh "did not act in good faith or with due care" and is "liable for any and all acts, as [he] independently acted on [his] own knowledge." (Doc. 67, p. 5.) Plaintiff does not address any of Defendants' evidence or arguments. The closest that Plaintiff comes to addressing these points is to refer to page 6 of Exhibit H to his opposition. This exhibit notes that Dr. Kitt specifically requested that he be sent to a U.C. Hospital for his ear condition, but that "defendants chose instead to send petitioner to Dr. Suesberry on 10/5/10." It asserts also that Plaintiff "*may* not have complete hearing loss in his left ear" if he had instead been sent to a U.C. Hospital. (Doc. 67, p. 9 (emphasis added).) This argument fails for two reasons.

First, as previously mentioned, Plaintiff has not shown that he has any medical training or knowledge upon which to opine that a U.C. Hospital might have been able to salvage his hearing. Second, even if Plaintiff had such medical expertise, a mere possibility that he *may* not have lost his hearing is insufficient to prove that any of the Defendants' actions actually caused his hearing loss by failing to refer him to a U.C. Hospital. The Ninth Circuit Model Civil Jury Instructions require Plaintiff to prove by a preponderance of the evidence (more likely than not) that Defendants' acts were so closely related to the deprivation of his rights as to be the moving force that caused the ultimate injury. Plaintiff's mere assertion that he *may* not have suffered complete

hearing loss if Defendants had sent him to a U.C. Hospital is insufficient to prove, more likely than not, Defendants' acts caused the hearing loss in his left ear. Given the above, Thus, because Plaintiff does not meet his burden in opposing Defendants' motion and summary judgment, the Court recommends that the motion be **GRANTED** to Dr. Enenmoh.

## V.     Conclusions and Recommendations

As set forth herein, this Court finds that Defendants have met their burden of demonstrating their entitlement to summary judgment.  Accordingly, the Court **RECOMMENDS**:

1.  Defendants Warden Allison, Dr. Metts, and Dr. Enenmoh are entitled to judgment as a matter of law such that their Motion for Summary Judgment, filed on March 26, 2015 (Doc. 62), should be **GRANTED**; and
2.  The Clerk of the Court be directed to enter judgment against Plaintiff and for Defendants Warden Allison, Dr. Metts, and Dr. Enenmoh, and that this action be closed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 11, 2016**                    /s/ Jennifer L. Thurston
                                                             UNITED STATES MAGISTRATE JUDGE